# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SABRINA M. COMSTOCK, )
)
    Plaintiff, )
)
        v. )   Case No. CIV-11-330-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
    Defendant. )

## OPINION AND ORDER

The claimant Sabrina M. Comstock requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born June 5, 1967, and was forty-two years old at the time of the administrative hearing. (Tr. 28). She completed the twelfth grade, and has worked as a cashier/checker, assistant manager, nursery school attendant, spray painter, and receptionist. (Tr. 17, 167). The claimant alleges inability to work since August 14, 2008, due to bi-polar disorder, manic agoraphobia and anxiety, and a sleeping disorder. (Tr. 160).

## Procedural History

On December 19, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 25, 2010. (Tr. 10-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift/carry ten pounds

occasionally and frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. Additionally, he found that she could not bend, stoop, kneel, crouch, or crawl; she could understand, remember, and carry out only simple one- to two-step instructions and tasks with routine supervision, but could not work around or with the general public; and she could relate to co-workers and supervisors on a superficial basis only. (Tr. 14). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could do in the national and regional economies, *e. g.*, hand suture winder and assembler. (Tr. 18).

### Review

The claimant contends that the ALJ erred (i) by improperly considering and evaluating the medical evidence, (ii) by failing to consider all of her impairments at steps two and three, (iii) by failing to consider the effects of her impairments at step five, and (iv) by improperly assessing her credibility. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The medical evidence reveals that the claimant had the severe impairments of diabetes, bi-polar disorder, affective disorder, and panic disorder. (Tr. 12). The records as to her mental impairments reveal that the claimant received mental health treatment from Carl Albert Community Mental Health Center (CACMHC) as far back as 2003. (Tr. 211-237, 269-291). She was discharged in 2005 because her participation in the treatment had been "inconsistent," including numerous missed appointments, but she

resumed treatment in 2006. (Tr. 211, 269-*ff*). The discharge paper notes that she had been diagnosed with bipolar I disorder, most recent episode mixed, moderate; and panic disorder without agoraphobia. (Tr. 211).

Licensed Psychologist Beth Jeffries, Ph.D., performed a consultative mental examination of the claimant on February 21, 2009. (Tr. 292-294). She took the claimant's history, and noted her activities of daily living. Additionally, she noted that the claimant reported having a checking account for seven years, and that she believes she could manage her own funds, but Dr. Jeffries noted that the claimant also reported that she had a gambling problem and therefore asked a friend go shopping with her every time she went grocery shopping, to ensure that she did not overspend and that she was aware she would likely overspend. Dr. Jeffries therefore recommended that if the claimant were awarded benefits that she have assistance with them. (Tr. 293-294). As to the claimant's prognosis, Dr. Jeffries stated that "it [wa]s likely that her symptoms of bipolar do interfere with her ability to perform in some occupational settings as she might find it difficult to concentrate or to maintain a steady behavioral pattern over a workday," and that "[h]er prognosis would considerably worsen without treatment." (Tr. 294). Following this assessment, a state reviewing physician found that the claimant had moderate limitations in the following areas of functional limitation: restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, but that there was insufficient evidence as to any episodes of decompensation. (Tr. 306.) The reviewing physician then found that the claimant had the functional capacity to do only simple tasks, nothing complex or

too detailed; could only relate on a superficial, incidental basis, and not at all with the general public; and that her adaptive functions were intact with treatment compliance and sobriety. (Tr. 312).

At the administrative hearing, the claimant testified that she was receiving unemployment benefits and continued to submit job applications every week, that she has insomnia and does not sleep very much, and that her diabetes causes frequent urination, a dry and thirsty mouth, tingling hands and feet, and swelling to the point that she could not wear rings on her hands. (Tr. 32-33, 35-36, 38). She also stated that cleaning for over twenty minutes would cause her to experience shortness of breath, and that she carries an inhaler with her. (Tr. 38-39). She further testified that she believed she could alternate sitting and standing every thirty minutes due to back and leg pain, for up to four hours. (Tr. 40-41). She said that her depression keeps her in bed four to five days a week, that she spends 75% of her days lying down, and that she has been treated for depression for approximately twelve years and was currently in treatment. (Tr. 42, 44). She also stated that she has trouble concentrating, because her mind races. (Tr. 43).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. The ALJ noted the claimant's treatment records from 2003-2006, including the fact that she was discharged in 2005 for missing a number of appointments, and that she had resumed treatment in 2006 and was "discharged to continue therapy." (Tr. 15). The ALJ also took note of the 2007 treatment records from CACMHC, particularly the note that the claimant had been off of her medications the previous year and that her symptoms had improved with treatment. (Tr. 15-16). The

ALJ summarized most of Dr. Jeffries' report, including the claimant's reported history. The ALJ focused particularly on the fact that the claimant wore jewelry and had multiple piercings at the examination, and found that contrary to her testimony at the hearing. At the hearing, the claimant testified that she could not wear her rings due to swelling, and the ALJ apparently interpreted that to mean she could not wear any jewelry whatsoever. (Tr. 16, 38). The ALJ then recited Dr. Jeffries Axis I diagnostic impression of bipolar disorder, methamphetamine abuse in remission and gambling addition, but made no mention of her diagnostic impressions of: Axis III COPD and Axis IV unemployment, financial strain, and childhood history of sexual abuse. (Tr. 294). Additionally, the ALJ made no mention of Dr. Jeffries prognosis and recommendations, including the recommendations as to management of funds, and in fact cited Dr. Jeffries' report in support of his finding that the claimant *could* manage her own funds. (Tr. 17). The ALJ then gave the opinions of the state reviewing physicians great weight because he stated that he found no evidence to contradict them. (Tr. 17).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment

relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ erred when he failed to discuss *all* of Dr. Jeffries' findings as to the claimant's impairments, and only cited those favorable to his finding of nondisability. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the Court cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615,

621 (10th Cir. 2006). Consequently, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 12th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma